CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 09 2023

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| Lakeysia G.,[1] <br>     Plaintiff, <br><br> v. <br><br> Kilolo Kijakazi, <br> Commissioner of Social Security, <br>     Defendant. | ) <br> )    Civil Action No. 4:22-cv-00005 <br> ) <br> )    REPORT & RECOMMENDATION <br> ) <br> )    By:    Joel C. Hoppe <br> )            United States Magistrate Judge <br> ) |

     Plaintiff Lakeysia G. asks this Court to review the Commissioner of Social Security's final decision denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' briefs, and the applicable law, I cannot find that the Commissioner's final decision is supported by substantial evidence. Accordingly, I respectfully recommend that the presiding District Judge reverse the decision and remand the case under the fourth sentence of 42 U.S.C. § 405(g).

## I. Standard of Review

     The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

1

2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or

equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

In October 2019, Lakeysia filed for DIB and SSI alleging that she had been unable to work since April 13, 2018, because of diabetes; diabetic neuropathy in her hands, legs, and feet; bilateral knee pain; migraines; severe fatigue; nausea, abdominal pain, and vomiting; all over body pain and aches; low back pain; depression and bipolar disorder; and anxiety and panic disorder. *See* Administrative Record ("R.") 258–59, 260–67, 302 305, ECF No. 12-1. Lakeysia was forty-one years old, or a "younger person" under the regulations, on her alleged disability onset date. R. 260; 20 C.F.R. §§ 404.1563(c), 416.963(c). Disability Determination Services ("DDS"), the state agency, denied her claims initially in March 2020, R. 72–87, 88–103, and upon reconsideration in September 2020, R. 108–23, 124–39. On April 8, 2021, Lakeysia appeared with counsel and testified at an administrative hearing before ALJ H. Munday. *See* R. 36–71. A vocational expert ("VE") also testified at this hearing. R. 62–69.

ALJ Munday issued an unfavorable decision on June 2, 2021. R. 10–21. She found that Lakeysia had not worked since April 13, 2018, and that she met the Act's insured-status

---

[2] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

3

requirement through September 30, 2023.[3] R. 12. At step two, the ALJ found that Lakeysia had severe medically determinable impairments of "degenerative joint disease of the knees, obesity, degenerative disc disease, shoulder impairments, left carpal tunnel syndrome, anxiety, depression, and post-traumatic stress disorder." R. 12–13. Lakeysia's other medical conditions did not have more than a minimal effect on her functional abilities during the relevant period, and, thus, were not severe impairments. R. 13. Her severe impairments did not meet or medically equal a relevant Listing. *See* R. 13–15 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.15, 1.18, 12.04, 12.06, 12.15, and SSR 19-2p).

The ALJ then determined that Lakeysia had the following residual functional capacity ("RFC"):

> perform "sedentary work"[4] … with lifting and/or carrying up to 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking up to 2 hours, and sitting up to 6 hours in an 8-hour workday except occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; no climbing ladders, ropes, and scaffolds; no overhead reaching with the left upper extremity; frequent overhead reach with the right upper extremity; frequent handle and feel with the left upper extremity; occasional push/pull activities with the left upper extremity and bilateral lower extremities; occasional exposure to vibrations; occasional exposure to hazardous conditions, including unprotected heights and moving machinery; able to perform simple, routine tasks; occasional interaction with the general public, co-workers, and supervisors.

R. 15. Based on this RFC and the VE's testimony, the ALJ determined that Lakeysia could not

---

[3] The latter date is called the date last insured, or "DLI." *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012). "To qualify for DIB, [Lakeysia] must prove that she became disabled prior to the expiration of her insured status." *Johnson*, 434 F.3d at 655–56.

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying [objects] like docket files, ledgers, and small tools," 20 C.F.R. §§ 404.1567(a), 416.967(a), and generally requires sitting for about six hours, and standing/walking for about two hours, during an eight-hour workday, *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 768 (W.D. Va. 2002). *See* SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). Younger "[i]ndividuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations," *id.*, but they are not presumed disabled unless they are also "illiterate or unable to communicate in English," *see* 20 C.F.R. pt. 404, subpt. P, app. 2 §§ 201.00, 201.17–201.29.

perform her past relevant work, but she could perform other sedentary work that offered a significant number of jobs in the national economy. R. 19–21. Accordingly, the ALJ found that Lakeysia was not disabled during the relevant period. R. 21. The Appeals Council denied Lakeysia's request to review the ALJ's decision, R. 1–3, and this appeal followed.

### III. Discussion

Lakeysia challenges the ALJ's decision on several grounds. *See* Pl.'s Br. 20–44, ECF No. 19. As to the first ground, I find that the ALJ erred in failing to address Lakeyasia's "severe" obesity and the effect it may have had on her functioning. *See* Pl.'s Br. 20–26. Accordingly, I find that the case must be remanded.

A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite her medical impairments and symptoms.[5] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). It is a factual finding "made by the [ALJ] based on all the relevant evidence in the case record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011), and it should reflect specific, credibly established "restrictions caused by medical impairments and their related symptoms" that affect the claimant's "capacity to do work-related physical and mental activities," SSR 96-8p, 1996 WL 374184, at *1, *2. *See Mascio v. Colvin*, 780 F.3d 632, 637–40 (4th Cir. 2015); *Reece v. Colvin*, 7:14cv428, 2016 WL 658999, at *6–7 (W.D. Va. Jan. 25, 2016), *adopted by* 2016 WL 649889 (W.D. Va. Feb. 17, 2016). The ALJ has broad (but not unbounded) discretion to decide whether an alleged limitation is supported by or consistent with other relevant evidence, including objective evidence of the underlying medical impairment, in

---

[5] "Symptoms" are the claimant's own description of her medical impairment. 20 C.F.R. §§ 404.928(a), 416.902(n).

5

the claimant's record. *See Perry v. Colvin*, No. 2:15cv1145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016) (citing *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)). Generally, a reviewing court will affirm the ALJ's RFC findings when it is clear that she considered all the relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and she built an "accurate and logical bridge from that evidence to [her] conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quotation marks and brackets omitted). *See Thomas v. Berryhill*, 916 F.3d 307, 311–12 (4th Cir. 2019); *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 662 (4th Cir. 2017).

In making an RFC determination, an ALJ should consider the combined effect of all the claimant's medical impairments. 20 C.F.R. §§ 404.1545(a)(2), (e), 416.945(a)(2), (e). Social Security Ruling 19-2p acknowledges that obesity may compound the effects of other impairments:

> We must consider the limiting effects of obesity when assessing a person's RFC. RFC is the most an adult can do despite his or her limitation(s). As with any other impairment, we will explain how we reached our conclusion on whether obesity causes any limitations.
>
> A person may have limitations in any of the exertional functions, which are sitting, standing, walking, lifting, carrying, pushing, and pulling. A person may have limitations in the nonexertional functions of climbing, balancing, stooping, kneeling, crouching, and crawling. Obesity increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities. Obesity may also affect a person's ability to manipulate objects, if there is adipose (fatty) tissue in the hands and fingers, or the ability to tolerate extreme heat, humidity, or hazards.
>
> We assess the RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment. People with an MDI of obesity may have limitations in the ability to sustain a function over time. In cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity. This may be particularly true in cases involving obesity and sleep apnea.

> The combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately. For example, someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to the arthritis alone. We consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments.

SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019).

    A.    Medical Evidence and Opinions

At a doctor's appointment in December 2018, Lakeysia's height was five feet one inch, her weight was 301 pounds, and her Body Mass Index ("BMI") was 56.87.[6] R. 584. From 2018 to 2021, Lakeysia's weight fluctuated between 288 and 327 pounds. *See* R. 627, 892, 938, 1282.

Treatment notes throughout the record show that Lakeysia complained of knee pain and had knee crepitus and gait abnormalities. *See, e.g.,* R. 588–91, 768, 1084–85, 1237. X-rays taken in March 2018 of Lakeysia's right knee showed moderate degenerative arthritis, which had increased since 2016. R. 864. Two years later, X-rays showed, "[m]edial compartment narrowing of both knees, right more so that left is consistent with osteoarthritis." R. 665. In June 2020, physical examination of Lakeysia's knees showed, "mild bilateral thickening, warmth (right more than left) and genu valgus with medial knee tenderness to palpation and bilateral swelling present." R. 939. Her gait was "[a]ntalgic, unsteady, slow; ambulatory with cane." *Id.* The assessment was "Ambulatory disfunction," "Osteoarthritis of both knees, unspecified osteoarthritis type," and "Knee gives out." *Id.*

---

[6] "BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters. For adults, both men and women, Clinical Guidelines describe a BMI of 25 to 29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.' The clinical guidelines recognize three levels of obesity. Level I includes BMIs of 30.0–34.9. Level II includes BMIs of 35.0–39.9. Level III, terms 'extreme' obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss." SSR 02-1p, 2002 WL 34686281, at *2.

In March, Richard Surrusco, M.D., reviewed Lakeysia's medical records on behalf of the state agency. Dr. Surrusco determined that Lakeysia could perform sedentary work (stand or walk for two hours and sit for six hours in an eight-hour workday and lift twenty pounds occasionally and ten pounds frequently) with postural and environmental limitations. R. 81–83, 97–99. On reconsideration review in September 2021, Michael Koch, M.D., found that Lakeysia could perform sedentary work with occasional postural limitations. R. 119–20, 134–35. Dr. Koch attributed these limitations to Lakeysia's bilateral knee osteoarthritis, diabetes, obesity, and hypertension. R. 119, 134.

B.  Lakeysia's Statements

Lakeysia submitted two function reports. R. 324–31, 348–55. She indicated that pain in her back and knees limited her activities. R. 324, 348. She could walk for only fifteen minutes before needing a break. R. 329, 353. Squatting or bending made her knees lock, and she could lift only five pounds. *Id.* She could drive and cook simple meals, like making sandwiches or heating a frozen dinner. R. 326–27, 350. She could go out alone, but sometimes she needed another person to go with her because her knees would give out. R. 327. She went to church twice a month, R. 328, and shopped for groceries once a month, R. 351. She watched television and played games on her phone. R. 352.

During the administrative hearing, Lakeysia testified that she had pain in her legs, knees, arms, and shoulders. R. 53–54. She had trouble lifting her arms, particularly her left, and her hands "go numb." *Id.* She used a walker that was prescribed by her doctor. R. 54–55. She could sit for five to ten minutes before she needed to stand, and she could stand for five to ten minutes before she needed to sit, but she spent most of the day in bed. R. 55–56. She experienced fatigue

daily. R. 58. When she shopped for groceries, she walked with a cane or walker, or she rode in a "buggie." R. 61. Lakeysia also discussed the effects of her mental impairments. R. 58–61.

    C.    Analysis

The ALJ found that Lakesia's degenerative joint disease of the knees, obesity, degenerative disc disease, shoulder impairments, left carpal tunnel syndrome, anxiety, depression, and post-traumatic stress disorder were severe impairments. R. 12–13. At step three, the ALJ determined:

> The claimant's obesity was considered in terms of its possible effects on the ability to work and perform activities of daily living. Social Security Ruling 19-02p[sic] provides guidance on evaluating obesity in disability claims. The undersigned is required to consider obesity in determining whether a claimant's severe impairments meet or equal any listing. The undersigned has earlier found the claimant's obesity to be severe, but the signs, symptoms, and laboratory findings indicate the obesity is not of such severity as found in any listing. The claimant's limitations due to obesity are reflected in the below residual functional capacity.

R. 14. In reviewing the medical evidence, the ALJ noted that Lakeysia "has a history of … obesity" and her other MDIs, R. 17, but in discussing the treatment records, medical opinions, and Lakeysia's subjective statements, the ALJ did not mention any evidence of Lakeysia's obesity, *see* R. 16–19. The ALJ discussed the nature of Lakeysia's treatment, her medical providers' observations, her activities of daily living,[7] and the medical opinions, but the ALJ did not mention her obesity in the RFC analysis. *See* R. 18–19. Indeed, aside from the mostly-boilerplate, single paragraph discussion of obesity at step three, the ALJ did not mention Lakeysia's obesity other than to note her history of it.

---

[7] The ALJ discussed the activities that Lakeysia said she performed: "drive, shop for groceries, prepare simple meals, dress, and play games on her telephone." R. 18; *cf. Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("Courts have warned against equating modest daily activities like doing household chores with a person's 'ability to hold a job outside the home.'").

9

The ALJ's conclusion that obesity is a severe impairment does not by itself necessitate additional limitations. *See* SSR 19-2p, 2019 WL 2374244, at *2 ("Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record."). An ALJ is also not required to include a detailed analysis regarding a claimant's obesity. *See Richards v. Astrue*, No. 6:11cv17, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012) ("[T]here is no language in SSR 02-1p that directs the ALJ to include a lengthy analysis, or indeed, any precise analysis regarding obesity when issuing an opinion. It only mandates that the ALJ consider the effect of obesity during steps two through five of the five-step inquiry."). But the ALJ must consider a claimant's obesity in steps two through five of the five step inquiry. *Id.* at *8. "[A] total failure to examine obesity in a disability hearing constitutes reversible error." *Id.* Here, the ALJ found obesity to be a severe impairment, but she did not mention the contents of a single treatment note that discussed Lakeysia's obesity. In her step three analysis, the ALJ cited the SSR for obesity, but she did not otherwise discuss the standard for ALJ's to evaluate the effects of a claimant's obesity on her functional abilities at any of the other steps of her analysis. The ALJ did not expressly "consider the limiting effects of obesity when assessing [Lakeysia's] RFC," and she did not "explain how [she] reached [her] conclusion on whether obesity causes any [exertional, nonexertional, manipulation, or environmental] limitations." SR 19-2p, 2019 WL 2374244, at *4. The ALJ's lack of analysis or explanation constitutes a near total failure to examine the limiting effects of Lakeysia's obesity on her RFC.

Lakeysia's BMIs placed her in the "extreme" range of obesity. She argues that her obesity exacerbated the limitations caused by several of her other severe impairments, including degenerative joint disease of the knees. Nevertheless, the ALJ did not meaningfully discuss the

10

relationship between Lakeysia's "extreme" obesity and her back and knee impairments and their effect on her functional abilities. Accordingly, reversal is required.

I take no position on whether Lakeysia is entitled to disability benefits for the relevant period. On remand, the Commissioner must consider and apply the applicable legal rules to all the relevant evidence in the record and, assuming Lakeysia cannot prove she was disabled based on the medical evidence alone, provide a logical link between the evidence the Commissioner found credible and the RFC determination.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **GRANT** Lakeysia's Motion for Summary Judgment, ECF No. 18, **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 20, **REVERSE** the Commissioner's final decision, **REMAND** the matter under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this case from the Court's active docket.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: March 9, 2023

*Joel C. Hoppe*
Joel C. Hoppe
United States Magistrate Judge